## ATOKA MILLING CO. v. GROOMER.

No. 18141.   Opinion Filed May 29, 1928.

(Syllabus.)

1. **Attachment—Invalidity Where Property Seized on Sunday Outside County and Forcibly Brought into County.**

Where personal property of defendant is seized under attachment on Sunday by a deputy sheriff outside his county and outside the county in which the suit is brought, and by him forcibly and against the will of defendant carried into said county, such seizure and removal is unlawful and constitutes a trespass, and it was not error for the court upon proper motion and proof showing these facts to vacate and discharge such seizure.

2. **Same—Invalidity of Second Attachment Immediately After Discharge of First.**

Where, under the facts set out in paragraph 1, and immediately upon the release of said property to defendant, plaintiff caused said property to be seized again upon an alias order of attachment, and where defendant appeared specially and moved to discharge such attachment upon the ground that the first attachment was void for the reasons set out in paragraph 1 hereof, and that his property was unlawfully brought into the county of the second attachment against the will of defendant, and that he was in said county as witness and party solely for the purpose of having his property discharged from such attachment, and where the foregoing are found by the court to be the facts, the discharge of such property from seizure is proper.

Commissioners' Opinion, Division No. 2.

Error from District Court, Atoka County; P. L. Gassaway, Judge.

Proceeding by Atoka Milling Company for attachment of C. H. Groomer's personal property to satisfy plaintiff's claim. From an order discharging property from attachment, plaintiff appeals. Affirmed.

J. G. Ralls, for plaintiff in error.

I. L. Cook, for defendant in error.

BENNETT, C. Atoka Milling Company sued C. H. Groomer in district court of Atoka county for a money judgment in August, 1926. The return of summons shows service on the wife of defendant.

In October, following, plaintiff filed an affidavit for attachment, alleging, among other things, that defendant was a nonresident, and under this affidavit an alias order or writ of attachment was issued October 18, 1926, to sheriff of Atoka county. Under and by virtue of the writ, said sheriff, through his deputy, went over into Bryan county near Durant, Okla., and levied upon, as the property of defendant, a motor truck loaded with household goods. This levy was made on Sunday, October 24th, and immediately following levy, the sheriff forcibly and against the will of defendant carried the attached property along with defendant back to Atoka county to the town of Caney, where defendant had formerly lived.

Defendant filed a motion in the cause to quash and discharge the levy, supporting same by affidavit and other proof to the effect that said levy was without authority of law, and that the property was attached and defendant served with writ and notice of attachment by sheriff of Atoka county, while defendant and his goods were in Bryan county, and that such attachment and process was served and levied on Sunday, October 24, 1926. After hearing upon the motion, both parties being present by their attorneys, the court made an order quashing and setting aside the levy, and discharging the property and goods of defendant from attachment for the reason that said levy was without legal authority.

Immediately following the discharge of attachment, the property was turned over to defendant, who resumed his journey to his home in Hamlin, Tex., and on the same day, and immediately after discharge of the property, plaintiff sued out an alias order or writ of attachment, and caused the sheriff of Atoka county to serve same and attach the defendant's property a second time. This attachment was made in Atoka county, and before defendant had an opportunity to remove his property from said county, but

while he was on the way out of, the county. On October 28, 1926, defendant made a special appearance, and filed a motion to quash as unlawful, the issuance and service of the second attachment, alleging, among other things in his supporting affidavit, that on October 26, 1926, defendant was attending court in Atoka county as a material witness and as a suitor in the case of Atoka Milling Co. v. C. H. Groomer, and further that it was his intention to return to his home in Texas after attendance upon said court; that immediately after his business at court was over he started on his return home, but was overtaken by deputy sheriff of Atoka county, and served with said order of attachment, and also that said goods had been formerly attached at instance of plaintiff by sheriff of Atoka county while said goods and defendant were in Bryan county, Okla., on Sunday, October 24, 1926, and that said goods and defendant were unlawfully and by force brought by said sheriff from Bryan county into Atoka county on Sunday, October 24th; said motion prayed that the attachment be dissolved, and the goods of defendant discharged.

Upon hearing of the motion, all parties being present, the records, motions. pleadings, process, and return were introduced in evidence, and it was then agreed by and between the parties in open court that the writ of attachment sought to be quashed was issued and seizure of property thereunder sought to be discharged was made after the court had theretofore discharged said property from seizure under a former writ of attachment made on Sunday in Bryan county by sheriff of Atoka county, and it was further agreed that after such discharge, and on the same day. plaintiff caused an alias writ of attachment to issue under which the same property was again seized after the property had been delivered to defendant and while he was on his way home. It was agreed also that the sole question to be determined was whether or not the seizure was void under the circumstances. and the court, after hearing argument of counsel and the examination of pleadings, etc., made the following findings:

"The court finds that said automobile truck and household goods had been formerly seized under a prior writ of attachment issued on the 18th day of October. 1926, and that the seizure was made on Sunday in Bryan county, Okla. by the sheriff at Atoka county. Okla. * * *' And the court, on the 26th of October. 1926, discharged said automobile truck loaded with household goods

from seizure because the same had been seized on Sunday.

"The court further finds that when said * * * goods were seized under the prior attachment on Sunday, the same was taken forcibly and unlawfully from Bryan county, Okla., to Atoka county, Okla.; * * * that the said C. H. Groomer at the time of the seizure was a resident of the state of Texas, but the household goods had never been moved from the state of Oklahoma. * * *

"The court further finds that the defendant, C. H. Groomer, was, on October 26, 1926, in good faith attending the district court of Atoka county, Okla., as a suitor and a material witness in his motion to quash and set aside the writ of attachment and discharge the property seized thereunder, and that he and his said goods had been unlawfully brought here under void service of process. * * * And * * * C. H. Groomer * * * had no other business at Atoka, except to be present as a party and to testify in his own behalf. * * *

"And the court further finds that the possession of said property had been unlawfully obtained. * * * That the seizure * * * was illegal, and that the said defendant, C. H. Groomer, had a reasonable time to remove said property from Atoka county after the same had been discharged by the, court, and that he had not been given a reasonable time to remove the same, and that therefore the seizure was in violation of the law of attachment where possession of property had been unlawfully obtained for the purpose of levying thereon, and of the privilege and exemption from service while attending court in good faith.

"The court further concludes * * * that the reseizure under an alias attachment herein was void."

The goods were ordered returned to the defendant. To which conclusions of law and judgment and order, plaintiff excepts, and appeals to this court for review.

This record presents but a single question: Was the attachment levied upon defendant's goods in Atoka county a void attachment? It will be observed: First. That section 1827, C. O. S. 1921, prohibits the service of legal process of any description upon the first day of the week, except in cases of breach or apprehended breach of the peace, or when sued out for the apprehension of a person charged with crime, or except where such service shall be specially authorized by law. Second. There is no statute authorizing the sheriff of Atoka county to attach in a civil suit property of defendant located outside of the county of such sheriff. Section 343,

C. O. S. 1921. For these reasons we conclude that plaintiff and the sheriff, in making the first seizure, were trespassers, and, while acting under color of authority, were entirely without warrant of law. Third. When such plaintiff, and at his instance, the Atoka sheriff, forcibly and without right brought defendant's property and defendant against his will out of Bryan county and into Atoka county, neither defendant nor his property was rightfully there for the purposes of process on behalf of plaintiff.

The general doctrine laid down in 6 C. J., par. 473, page 245, is:

"**Where Levy Effected Through Unlawful Detention.** Although it is indisputable that, where possession of property has been unlawfully obtained for the purpose of levying thereupon, such levy is wrongful and cannot be upheld against anyone who is so situated that he can urge its invalidity, yet such objection is not available to a party whose right also springs solely from a seizure effected through the unlawful detention."

In the case of Morris v. Shew, 29 Kan. 661, it is held that the service of an attachment on Sunday is illegal.

In the case of Pomroy v. Parmlee, 9 Iowa, 140, 74 Am. Dec. 328, the court, in the first paragraph of the syllabus, says:

"**Levy Void if Made Fraudulently or by Using Unlawful Force.** The sheriff of one county, having a writ in his hands for service against the property of defendant, found such property in defendant's possession in another county. He stated to him that he had an attachment against his property, took possession of it, conveyed it into his own county, and there made a formal levy. Held, to be a void levy."

The third paragraph of the syllabus reads as follows:

"It is the province of the court to see that neither the law, nor its officers, nor its instruments, are made auxiliary to corrupt, unjust, or oppressive ends. Courts frequently remedy such evils upon motion, where the question relates to the control, use, or misuse of the process of the court."

The court in the opinion says:

"Under the foregoing circumstances, the law is plain. It does not recognize the principle that we may do evil in order that good may come of it; nor that the end justifies the means. It is well settled that a valid seizure, service, or execution cannot be obtained through means rendered unlawful by fraud or violence. This subject is fully investigated by Chief Justice Shaw, in Illsley v. Nichols. 12 Pick. 270 (22 Am. Dec. 425), where the cases are collected. The case of

Wells v. Gurney, 8 Barn. & Cress, 769, was similar to the present one, in this, that the defendant was arrested on Sunday, under criminal process, and held until Monday, that he might be then arrested on civil process. It was ordered that he be discharged."

Quoting from the case of Illesly v. Nichols, 12 Pick. 270, 22 Am. Dec. 425, the court said:

"'These authorities (referred to by him) go directly to support the broad position laid down by Lord Holt, who, after saying that if a man is wrongfully brought into a jurisdiction and there lawfully arrested, he ought to be discharged, adds, for no lawful thing founded on a wrongful act can be supported.' It was urged in that case that the protection of the house, as one's castle, was intended for the person, and would not extend to his property; but this distinction was not countenanced; and in the note to Bacon's Abridgment, there cited, it is stated that in the case of Yates v. Delamayne, 8 Bac. Abr., Bouz. Ed., 276, the court of exchequer set aside an execution under similar circumstances. The Chief Justice concludes that 'these cases seem to establish the general principle that a valid and lawful act cannot be accomplished by any unlawful means, and whenever such unlawful means are resorted to, the law will interfere and afford some suitable remedy, according to the nature of the case, to restore the party injured by these unlawful means to his rights. * * * The authority (of the sheriff) is given upon this restriction and condition, that it shall not be abused or exceeded, or colorably used to effect an unlawful purpose. The law will operate retrospectively to defeat all acts thus done under color of lawful authority when exceeded; and a fortiori will it operate prospectively to prevent the acquisition of any lawful rights by the excess and abuse of an authority given for useful and beneficial purposes.' He then proceeds to demonstrate the proposition that it would be dangerous to establish the rule that rights might be acquired by such abuses of authority, by giving effect to an attachment procured through violence and wrong; and concludes that when the means are unlawful, all the declared objects and purposes to be accomplished thereby are alike unlawful, and that no legal rights can thereby be acquired either by the officer himself or by his employers.

"The facts disclosed show a great abuse of the law, and of the name of its process, and of the authority of its officer. Under the pretense of having a writ, one who was an officer in another county took the property and carried it back 100 miles, or thereabouts, in order that he might bring it within the reach of legal process. The persons concerned submitted to what they were led to believe was the command of the law. It would be a shame to the law if such things

were permitted, and even if the actors were allowed to reap a benefit from them, the same as if they had done no wrong. And so it would be if the law could not arrest them in their progress, but must suffer the wrongdoer to complete his scheme, and turn the complaining party over to the tardy and expensive satisfaction of an action at law. It seems to us that the court is competent, of course and of necessity, to control its own process, and protect that and the law from such misuse."

In the case of Deyo v. Jennison, 10 Allen (Mass.) 410, in the syllabus, it is said:

"If a debtor who resides in another state is fraudulently induced by procurement of his creditor to bring into this commonwealth property which by the laws of the place of his residence is exempt from attachment, in order that it may be attached here, and the same is accordingly so attached, the attachment is void; and both the creditor and the officer who makes the attachment are liable in damages as trespassers, although the officer did not know of the fraud, and simply obeyed the terms of his precept."

The court in the opinion says:

"The officer and the creditor thus both became liable to the owner of the goods for this trespass, and no subsequent attachment made by the same creditor and officer on the 21st of October affected his rights. Otis v. Jones, 21 Wend. 394; Barratt v. Price, 9 Bing. 566."

In the case of Corning v. Dreyfus, 20 Fed. 426, the third paragraph of the syllabus says:

"A levy upon property, otherwise valid, if effected by means of an unlawful detention of the property is void. * * *"

In that case the levies on Sunday were held to be void. In the body of the opinion the court says:

"As a proposition of law it is indisputable that when a plaintiff has unlawfully obtained possession of a debtor's property for the purpose of levying process upon it, such levy is wrongful, and cannot be upheld as against anyone who is so situated that he can urge its invalidity." Citing Wells v. Gurney, 8 Barn. & C. 769; Illesly v. Nichols, 12 Pick. 270; and Closson v. Morrison, 47 N. H. 482.

In the case of Chubbuck v. Cleveland (Minn.) 35 N. W. 362, the third paragraph of the syllabus reads as follows:

"Where the service of process, as an attachment against the property of a nonresident, is procured by fraudulent devices, the court, on discovery thereof, will refuse to exercise its jurisdiction, and turn the plaintiff out of court; and the facts disclosing the fraud may be set up by answer. An appearance by an answer which simply sets up facts showing the want of jurisdiction, and protests against its exercise, and claims no other right, is not such an appearance as waives the objection." Citing in footnote Van Horn v. Mfg. Co. (Kan.) 15 Pac. 562: "Where a person by fraud and deceit inveigles another into the jurisdiction of the court, for the purpose of obtaining service of summons upon him, the service should be set aside. * * * **The remedy is not given on the ground that the court does not obtain jurisdiction of the person of the defendant, but upon the ground that the court will not exercise its jurisdiction in favor of a plaintiff who has obtained service by unlawful means.** And although the defendant may enter a general appearance, the court ought not to be precluded thereby from vindicating the integrity of its process by granting such relief." Townsend v. Smith (Wis.) 3 N. W. 439.

The court in the opinion says:

"As said by the court in Townsend v. Smith, supra: 'Such a case is entirely unlike one where there has been a failure of proper service of process, for there the failure affects only the defendant, while here the fraud affects the integrity of the process of the court.' Larned v. Griffin, 12 Fed. Rep. 590; Gilbert v. Vanderpool, 15 Johns. 243; 1 Wait. Pr. 562. * * * Again, the objection, strictly, is not that the court has not jurisdiction of the person, but that it ought not, by reason of the alleged fraud, to take or hold jurisdiction of the action. Wheelock v. Lee, 74 N. Y. 498; Higgins v. Beveridge, 35 Minn. 286, 28 N. W. Rep. 506."

In the case of Pakas v. Steel Ball Co., 68 N. Y. Supp. 397, the syllabus reads as follows:

"Where plaintiff caused a consignment of goods to be made to a third party by a nonresident on representations that plaintiff's relations with the nonresident were such that he could not deal directly with him, and then attached the goods when they came within the state, plaintiff could not be heard to complain of the insufficiency of a notice of a motion to vacate the levy."

In the opinion the court said:

"The plaintiff cannot be heard to complain of the alleged insufficiency of the notice of motion to the upholding of his own misdoing. An act of gross injustice has been done to the defendant in bringing his property into the jurisdiction of the court to subject it to an unlawful levy upon a duly authorized attachment, and we are of the opinion that the notice of motion was ample, under the circumstances, to warrant the making of the order appealed from."

In the case of Matthews v. Eby (Mo.) 151 S. W. 470, paragraph 2 of the syllabus reads:

· "Where one desiring to prevent removal from the county of property of his debtor temporarily there, having a single cause of action for a sum too great for the jurisdiction of a justice, split it, and had the property seized on two attachments issued by a justice, and then, in the absence of the debtor, dismissed them and seized the property on attachment in a suit in the circuit, the latter attachment, obtained by means of the other fraudulent attachments, gives no jurisdiction."

In the opinion the court says:

"The law is that an attachment levy effected by unlawful or fraudulent means is illegal and void, and confers no jurisdiction. Rosencranz v. Swofford Bros. Dry Goods Co., 175 Mo. 518, 75 S. W. 445, 97 Am. St. Rep. 609; Drake on Attachment (6th Ed.) sec. 193. This is upon the principle that courts will not lend their assistance to effectuate fraudulent or unlawful practices of suitors (Holker v. Hennessey, 141 Mo. 527; * * * or, as otherwise stated, no one should be permitted to take advantage of his own wrong, and no lawful thing can stand on an unlawful foundation. Rood on Attachment, sec. 186, citing Holker v. Hennessey, supra. So **where one came into possession of goods of another in one state fraudulently, or as a trespasser, and took them into another state without the consent of the owner, in order that a writ of attachment in that state could be levied upon them, it was held that the levy conferred no jurisdiction, and was** void. Rosencranz v. Swofford Bros. Dry Goods Co., supra; Powell v. McKee, 4 La. Ann. 108. * * * So it was held that if the levy be made by means of a trespass, it is vitiated. Bailey v. Wright, 39 Mich, 96. * * * This was an unlawful practice—a proceeding which the law never tolerates. Robbins v. Conley, 47 Mo. App. 502; note to Reynolds v. Jones, 44 Cent. Law J. 306; Wagoner v. Jacoby, 26 Mo. 532; Laine v. Francis, 15 Mo. App. 107. It was a fraud in law. Yet by this means fraudulent and unlawful attachment writs were procured, the property taken into custody and held until the defendant had left the county and was off his guard, when plaintiff dismissed the justice suits, and, fearful of losing the unlawful advantage he had gained thereby, hurriedly sued out this writ and caused the property to be seized thereunder before defendant had a chance to be advised. It is clear that this proceeding is but an attempt to reap the fruits of the unlawful practice by which it was made possible; and to permit plaintiff to prevail herein would be but to lend our assistance to effectuate such unlawful practice. Under the law it is our duty to refuse to do so, as it was the duty of the trial court. Jurisdiction cannot be unlawfully acquired as in this case."

The defendant in error also briefs the case upon the theory that defendant as a witness and as a suitor filed his motion to dismiss the attachment in Atoka county, and therefore that section 603, C. O. S. 1921, and under the holding of the court in Bearman v. Hunt, 68 Okla. 96, 171 Pac. 1124, and Burroughs v. Cocke & Willis, 56 Okla. 627, 156 Pac. 196, and other cases of similar import, would protect the defendant from the service of process while so engaged, and that he should have a reasonable time after the court proceeding within which to return to his home. The ruling might be defended upon this ground alone, but we shall not determine the matter on that single theory, for we feel confident that this court should yield no comfort or advantage to one who has been guilty of so plain a prostitution and abuse of the powers and process of court. It is no answer to say that the defendant should have known that his property could not, under the circumstances, be seized in Bryan county by a sheriff of Atoka county, and forcibly carried away, and that he should have resisted with force. Such a proceeding would have resulted probably in a breach of the peace, and possibly in the shedding of blood. We cannot think that one who has bowed to superior force and under pressure of colorable legal authority has lost anything by his pacific attitude. We hold, therefore, that the first attachment was illegal and void (it was so held and not appealed from), and that the carrying of defendant's property into Atoka county was a trespass against him, and without authority of law; and since the presence of the property in Atoka county was the direct result of an illegal act, it was not there for the purpose of attachment at the hands of one whose unlawful act brought it there.

For these reasons, the action of the court in dissolving and vacating the attachment is affirmed.

FOSTER, DIFFENDAFFER, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 6 C. J. p. 245, §469. (2) 6 C. J. p. 242, §465.