(No. 23480.—

OTTO KERNER, Attorney General, Appellant, *vs.* WILLIAM
HALE THOMPSON *et al.* Appellees.

*Opinion filed December 10, 1936—Rehearing denied Feb. 3, 1937.*

150

OTTO KERNER, Attorney General, (JAMES G. SKINNER, and WILLIAM G. WORTHEY, of counsel,) for appellant.

JAMES W. BREEN, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

On the petition of the Attorney General we granted leave to appeal from a judgment of the Appellate Court for the First District which had dismissed an appeal from the circuit court of Cook county. The original action in the circuit court was one in chancery instituted by the Attorney General against William Hale Thompson, the Waterway and Flood Control Association of the Mississippi Valley, a corporation, and others, to protect and preserve a certain fund of money donated in 1927 for the use and benefit of flood sufferers in the Mississippi valley, and to require defendants to account for and restore as a public charitable trust the portion of the funds not used for the original purpose. The circuit court decreed, among other things, that a total of $72,794.79 was properly disbursed from the funds collected, under the *cy pres* doctrine, and it was only that portion of the decree which the Attorney General complained of as erroneous. The circuit court also required the defendant Thompson to turn over the sum of $31,131.17 to the American National Red Cross, "without

prejudice to the right of said complainant, Otto Kerner, as Attorney General of the State of Illinois, to appeal from any part or portion of this decree." In the Appellate Court the defendants filed a motion to dismiss the appeal, and in support thereof showed that they had complied with the provisions of the decree requiring them to turn over the sum of $31,131.17 to the Red Cross. Counter-suggestions to the motion to dismiss were filed by the Attorney General, to the general effect that the findings and decretal order of the circuit court were severable. The Appellate Court treated the motion as in the nature of a plea of a release of errors, and dismissed the proceedings for the principal reason that the plaintiff had accepted the benefits of a part of the decree, and after receiving from the defendants the amount found to be due upon an accounting could not thereafter prosecute a writ of error or take an appeal to reverse the remainder of the decree. The nature of the appeal and the questions involved preclude us from deciding the case upon its merits.

We must first consider· the challenge to our jurisdiction. While the question of jurisdiction of the courts to take and determine this cause was raised by appellee Thompson for the first time upon the appearance of the cause in this court, the right to raise a jurisdictional point at any stage of the proceeding is unquestioned. (*People* v. *Old Portage Park District,* 356 Ill. 340.) The argument against our jurisdiction is properly divisible into two parts, although this division is not clearly made by Thompson. While admitting that the object of the trust was charitable, he states that it could not be a public charitable use since the relief to be dispensed under the trust went only to a restricted, specified class—*i. e.,* flood sufferers—and that it was to be applied to a particular and restricted territory—*i. e.,* the Mississippi valley. He therefore argues that the State, because of lack of generality of application of the use to both people and territory, did not have a right to interfere with or

question the acts of the trustees. His second argument is, that even though the situs of the trust fund, the trustee and the office of the trust are in Illinois, these facts do not give authority to the State to interfere where some of the funds came from donors outside of the State and the relief was not restricted to flood sufferers residing within the State.

The first argument of appellee Thompson is equivalent to a contention that he was simply handling a private charitable trust. The record will not sustain such a position, as it is conclusively shown that a public charitable use was established. This court had occasion to define a public charity in *Grand Lodge* v. *Board of Review,* 281 Ill. 480. We there said: "To constitute a public charity the benefit must not be conferred upon certain and defined individuals but must be conferred on indefinite persons composing the public or some part of the public, but the indefinite class may be of one sex or the inhabitants of a particular city, town or county or members of a particular religious or secular organization. (5 R. C. L. 293; 11 Corpus Juris, 338.) The fact of such discrimination among those members of the general public who need relief does not deprive the charity of its public nature. While classifications depending upon race, color or sex involuntarily affect individuals of the general public, membership in a church or society is no more involuntary than the selection of different callings or trades, as in the case of seamen, locomotive engineers, laborers, farmers, or other classes that would come within the distinction of a public charity in the case where the distinction was drawn. * * * A public charity cannot be limited to defined individuals, but if it operates upon indefinite persons whose care and support rest upon the public the effect is to afford relief from the public burden and the charity is public in its nature." This definition was quoted with approval in *Skinner* v. *Northern Trust Co.* 288 Ill. 229, and is supported by a great weight of authority in this and other States. The persons who were the

objects of the trust in question were indefinite persons comprising a part of the public, so as to bring the trust squarely within the definition of a public charitable use rather than a private charity.

The second point made by appellee Thompson is likewise untenable. The fact that the money was not entirely derived from contributions made by citizens of this State or the relief dispensed was not confined entirely within the bounds of Illinois is not controlling. The appeal for funds was generated and spread in Illinois by Thompson by virtue of his office as mayor and through the medium of Chicago newspapers and radio stations. The denominated trustee was not only a resident and citizen of Illinois but was an officeholder of importance, and the prestige of his office lent force and conviction to his appeal for funds. Appellee Thompson continued to reside in Illinois as a citizen during the time the funds came in and were dispensed. The Waterway and Flood Control Association was a corporation organized under the laws of Illinois, with its main office located in Thompson's office in the city hall of Chicago. Breen, who is the attorney for Thompson in this action, was one of the incorporators. The record shows that all the funds were deposited in and disbursed from Illinois depositaries on the orders of Thompson. The record does not show what percentage of the funds came from outside of the State, but we do not think the source of the contributions or the geographical distribution thereof is material, since the trustee's residence, the situs of the funds and the office of the trustee were all in this State. These facts were sufficient to give the State the necessary interest to support the action, since the fund was a public charitable use applicable to the public generally. The right of the State, acting through the Attorney General, to interfere in the handling of a public charitable use to prevent or correct abuses cannot be denied. *Stowell* v. *Prentiss*, 323 Ill. 309; *McGee* v. *Vandeventer*, 326 id. 425; *Attorney Gen-*

*eral* v. *Newberry Library,* 150 id. 229; *People* v. *Braucher,* 258 id. 604.

We come, now, to a consideration of the action of the Appellate Court in treating the motion to dismiss as a plea of a release of errors. Pleas are still in effect under the Civil Practice act. No rule has been adopted by this court and no statute has been enacted to dispense with pleas or to provide that in any event a plea of release of errors can be made by motion. As a matter of fact, a motion to dismiss is entirely different from, and inconsistent with, a plea of release of errors. Where a plea of release of errors is filed and is held insufficient the judgment or decree must be reversed. (*Great Northern Refining Co.* v. *Jeffris Co.* 308 Ill. 342, and cases cited; *George* v. *George,* 250 id. 251; *Page* v. *People,* 99 id. 418.) Rule 70 of the Rules of the Civil Practice act adopted by this court fixes the time for filing a plea when the defendant in error desires to plead and not join in error. An acceptance of part or all the benefits of a decree may be regarded as a release of errors, but as such it must be pleaded in order to entitle it to the consideration of the court. (*Compher* v. *Browning,* 219 Ill. 429, and cases cited.) The matters contained in the motion could not properly be treated as a plea of release of errors, especially after the defendants joined in error and filed briefs in the Appellate Court.

The record further shows that by its own terms the decree appealed from was severable. When a decree is severable and independent matters are disposed of therein, an appeal can be taken from a severable portion thereof or from that part dealing with a particular subject. (*Hoier* v. *Kaplan,* 313 Ill. 448; *Mussey* v. *Shaw,* 274 id. 351; *People* v. *Vogt,* 262 id. 170.) This was true prior to the adoption of the present Civil Practice act and is now specifically provided for. Rule 33 of the Rules of Pleading, Practice and Procedure, (State Bar Stat. 1935, chap. 110, par. 257; Smith-Hurd Stat. 1935, chap. 110, par. 259.33;) provides

for the form and contents of the notice of appeal and states: "It shall specify and describe the order, determination, decision, judgment or decree which is being appealed from, and if the appeal is from a part thereof only, it shall specify which part." Rule 33 is similar to and apparently adopted from section 562 of the Practice act of New York, which provides: "An appeal must be taken by serving * * * a written notice to the effect that the appellant appeals from the judgment or order or from a specified part thereof." Under this section the courts of New York have uniformly held that appeals from a particular portion of a decree are authorized. (*Ziadi* v. *Interstate Railway Co.* 89 N. Y. Sup. 606; *VanLoan* v. *Squires,* 4 id. 371.) When a statute is adopted from another State and has been previously construed by the courts of that State the statute is presumed to have been adopted with the construction placed upon it. *People* v. *Linn,* 357 Ill. 220; *ReQua* v. *Graham,* 187 id. 67.

The appeal in this case was taken only from that part of the decree about which there was any dispute, and that portion was specified in the notice of appeal. Here the decree was not only divisible in itself but was further divided by the trial court, which provided that the payment of the sum held in the bank "shall be without prejudice to the right of said complainant * * * to appeal from any part or portion of this decree." No appeal was taken by either party from other portions and no cross-errors were assigned by defendants. The remainder of the decree was therefore definitely settled and disposed of. The fact that the suit was for an accounting cannot change the rule, as no exceptions are to be found in the rule to prevent its application alike to all kinds of actions. Justice could not easily be served if the acceptance of benefits by a third party, who was not a party to the suit except as made so by the decree, could preclude an appeal from another portion of the decree by its operation as a release of errors. The payment of the check in this case to the Red Cross,

and its acceptance by that corporation as trustee, could not have released errors, because the money then paid is now, and at all times since its payment has been, under the direction and control of the court. The acceptance of benefits in a part of disputed funds by a trustee newly appointed by the court, who was not a party to the action, cannot bind either the Attorney General or the People in this case, and the right to maintain an appeal as to another portion of the fund remains the same as if all the money had been retained by the defendants.

The Appellate Court erred in treating the motion to dismiss as a plea of release of errors and in denying appellant the right to appeal from the specified portion of the decree.

The judgment of the Appellate Court is therefore reversed and the cause is remanded to that court, with directions to overrule the motion to dismiss and to consider the case on its merits.

*Reversed and remanded, with directions.*